IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| AMERICREDIT FINANCIAL SERVICES, INC. d/b/a GM FINANCIAL, | ) ) | |
| | ) | NO. 3:19-cv-01045 |
| Plaintiff, | ) | |
| | ) | JUDGE RICHARDSON |
| v. | ) | |
| | ) | |
| RICHARD K. LYONS, | ) | |
| | ) | |
| Defendant. | | |

## **MEMORANDUM OPINION**

Pending before the Court is Plaintiff's motion for partial summary judgment (Doc. No. 24, the "Motion"), which seeks summary judgment on Count I only and is supported by a memorandum of law (Doc. No. 24-1, "Memorandum in Support"). Defendant filed a response in opposition to the Motion (Doc. No. 36, "Response"), and did not file a supplemental response despite being given an opportunity to do so (Doc. No. 43). Plaintiff filed a reply (Doc. No. 39, "Reply") to the Response. Accordingly, the Motion is ripe for adjudication.

## FACTUAL BACKGROUND[1]

The subject of this dispute is a vehicle loan agreement entered into between Lyons Chevrolet Buick GMC, Inc. ("Lyons Chevrolet") and GM Financial ("Plaintiff") (collectively, the "Parties"). (Doc. No. 37 at ¶ 1). Defendant, Richard Lyons, at relevant times was the president and

---

[1] Unless otherwise noted, the facts in this section are taken from Plaintiff's Statement of Undisputed Material Facts and Defendant's Response to Plaintiff's Statement of Undisputed Material Facts (Doc. Nos. 25, 37). Unless indicated otherwise, the facts set forth in this section are undisputed. Thus, the facts set forth here are either undisputed or specifically identified as disputed. Additionally, the Court notes that there are many disputes regarding what is material and a legal conclusion. The Court has only included what it finds to be material and not a legal conclusion herein.

Plaintiff's Motion seeks judgment only as to Count I of the Complaint, which asserts Defendant's "contractual liability," i.e., liability for breach of contract. (Doc. No. 24 at 1 n.1). Accordingly, the facts in this section include only facts relevant to Count I.

1

sole shareholder of Lyons Chevrolet, as well as a guarantor of certain of Lyons Chevrolet's debt as further discussed below. (*Id.* at ¶¶ 3-5).

Lyons Chevrolet and Plaintiff entered into an initial Master Loan Agreement ("Original Agreement") on December 4, 2013, whereby Plaintiff provided vehicle inventory financing for Lyons Chevrolet on a revolving basis. (*Id.*) In connection with this Agreement and on the same date, Richard Lyons ("Defendant") executed a guaranty which guaranteed the "'prompt and punctual payment, when due, upon maturity, by acceleration or otherwise' of all obligations of Lyons Chevrolet to GM Financial." (*Id.* at ¶ 5 (quoting Doc. No. 25-4)).

The Parties entered into a subsequent Amended and Restated Master Loan Agreement ("Amended Agreement") on September 25, 2014. (*Id.* at ¶ 1). The Parties also executed several loan documents. (*Id.* at ¶ 7). The Amended Agreement included an operative "Schedule 1" dated May 29, 2018, which notes that Plaintiff was providing financing for new motor vehicles, used motor vehicles, new demonstrator vehicles, used demonstrator vehicles, and courtesy transportation vehicles. (*Id.* at ¶ 1) The Amended Agreement's Certificate of Authority authorized Defendant to execute the Amended Agreement and all other "notes, loan agreements, security agreements, mortgages, deeds of trust, pledge agreements, and any other related documents" required by Plaintiff. (*Id.* at ¶ 2). Plaintiff also extended credit to Lyons Chevrolet via a Promissory Note dated December 19, 2013 (the "Promissory Note") that prescribed a maximum principal loan balance of $300,000. (*Id.* at ¶ 4).

In April 2019, Plaintiff conducted an inventory audit at Lyons Chevrolet to determine its compliance with Plaintiff's loan requirements. (*Id.* at ¶ 14). The audit determined that Lyons Chevrolet had sold a number of vehicles financed by Plaintiff but did not thereafter deliver the "amount financed" to Plaintiff. (*Id.* at ¶ 15). Plaintiff therefore declared that the Amended

2

Agreement was in default and made demand for the payment of those vehicles, by sending a Notice of Default and Demand Letter on April 18, 2019. (*Id*. at ¶ 16). The parties disagree as to whether payments on the balance have been made and what the correct amounts of any payments are. (*Id*. at ¶ 17).

Defendant executed a Forbearance Agreement and Voluntary Surrender on May 2, 2019, which gave Lyons Chevrolet up to 120 days to cure its defaults. (*Id*. at ¶ 18). The forbearance period expired on August 30, 2019, without Lyon Chevrolet's default having been cured. (*Id*.). On September 20, 2019, Plaintiff's counsel sent a letter notifying Lyons Chevrolet of the expiration of the forbearance period, giving it one week to cure the remaining defaults. (*Id*. at ¶ 19).

On September 26, 2019, Lyons Chevrolet filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code. (*Id*. at ¶ 20). The next day, Lyons Chevrolet filed a Cash Collateral Motion in its bankruptcy case, seeking to use Plaintiff's cash collateral[2] in the operations of the dealership. (*Id*. at ¶ 21). The motion acknowledged that Lyons Chevrolet owed Plaintiff about $22 million. (*Id*. at ¶ 22). On September 30, 2019, Plaintiff objected to the motion based in part on the fact that Lyons Chevrolet had sold Plaintiff's vehicle inventory out of trust.[3] (*Id*. at ¶ 23-24).

---

[2] Although not defined by the parties, "cash collateral" is a debtor's "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents" in which a secured party has a security interest because the "cash collateral are in fact proceeds of [] property subject to the [secured party's] lien." § 9:1025. What is cash collateral, 5A Fed. Proc., L. Ed. § 9:1025.

[3] ["T]industry practice establishes that when the dealer sells an automobile without remitting the proceeds to the secured lender he is 'out of trust.'" *In re Penton*, 299 B.R. 701, 707 (Bankr. S.D. Ga. 2003). Section 6.1 of the Amended Agreement provides that "Borrower's use of the Collateral proceeds for any other purpose without first paying Lender the Amount Financed in connection with the item of Collateral shall be a breach of this Agreement and of Borrower's fiduciary duties and obligations in favor of Lender, shall constitute a prohibited conversion of Lender's Collateral, and *shall be considered a sale out of trust*." (Doc. No. 24-4 at § 6.1 (emphasis added)). Any sale "out of trust," therefore, would appear to violate the Amended Agreement (and, in Plaintiff's view, constitute grounds for objecting to Lyons Chevrolet's motion).

3

On October 4, 2019, the bankruptcy court granted Lyon Chevrolet's motion to use cash on an interim basis until October 8, 2019. (*Id*. at ¶ 27). On October 10, 2019, Lyons Chevrolet moved for an order approving bidding procedures and a sale of almost all its assets. (*Id*. at ¶ 28). The next day, the bankruptcy court entered a second interim order authorizing Lyons Chevrolet to use Plaintiff's cash collateral. (*Id*. at ¶ 29).

On December 4, 2019, the bankruptcy court entered a final order granting Lyons Chevrolet's expedited motion to use cash collateral. (*Id*. at ¶ 30). The same day, the bankruptcy court entered the final cash collateral order approving the sale of Lyons Chevrolet's dealership, among other things. (*Id*. at ¶ 33).

Plaintiff's Motion seeks summary judgment only on Count One of its Complaint, which asserts the contractual liability of Defendant.[4] (Doc. No. 24 at 1). Specifically, Plaintiff contends that it is entitled to summary judgment on Count One because Defendant "is responsible, jointly and severally, for the obligations of Lyons Chevrolet as its sole shareholder and president, in connection with the floorplan lending agreements with GM Financial."[5] (Doc. No. 24-1 at 2).

<u>LEGAL STANDARD</u>

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported  motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[4] Plaintiff "contemplates that, if successful in obtaining judgment against [Defendant] for contractual liability, it will dismiss its remaining counts of the Complaint without prejudice to make this motion totally dispositive, and seek to have this Court certify the ruling as a final judgment." (Doc. No. 24 at 1, fn. 1).

[5] Although the parties do not explain what a floor plan agreement is, such an agreement has been described as "an ordinary transaction in the car sale business [where the] security agreement for the floor plan provides for the dealer to keep the sale proceeds in trust for the lender." *In re Penton*, 299 B.R. 701, 707 (Bankr. S.D. Ga. 2003).

4

247-48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Anderson*, 477 U.S. at 248. A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018). If the summary judgment movant meets that burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Id*. at 628.

A party asserting that a fact cannot be or genuinely is disputed—i.e., a party seeking summary judgment and a party opposing summary judgment, respectively—must support the assertion by citing to materials in the record, including, but not limited to, depositions, documents, affidavits or declarations. Fed. R. Civ. P. 56(c)(1)(A). In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the non-moving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). Likewise, the court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id*.

The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the non-moving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

On a motion for summary judgment, a party may object that the supporting materials specified by its opponent "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Upon such an objection, the proponent of the supporting material must show that the material is admissible as presented or explain how it could be presented in a form that would be admissible. *Thomas v. Haslam*, 303 F. Supp. 3d 585, 624 (M.D. Tenn. 2018); *Mangum v. Repp*, 2017 WL 57792 at ** 5 (6th Cir. Jan. 5, 2017) (citing Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment).

<u>DISCUSSION</u>

Plaintiff raises three arguments in support of its Motion for Summary Judgment: (1) the Cash Collateral Order and Sale Order issued by the bankruptcy court are entitled to preclusive effect under the doctrine of *res judicata*, and thus, Defendant "is liable for the indebtedness arising under the floor plan loan agreements," (Doc. No. 24 at 3); (2) Defendant has waived its prerogative to do essentially anything to contest Plaintiff's claim against him because of positions taken and arguments made during the bankruptcy proceedings, (Doc. No. 24-1 at 20-21); and (3) alternatively, that Plaintiff "is entitled to judgment as a matter of law based upon the indisputable facts that demonstrate the amount owed to [Plaintiff] and [Defendant's] breach under the Guaranty, including, but not limited to, [Defendant's] failure to pay the outstanding obligations of Lyons

6

Chevrolet upon written demand" (Doc. No. 24 at 4). The Court will explore Plaintiff's arguments in turn.

A. *Res Judicata*

Plaintiff contends that based on the doctrine of *res judicata*, it is

> entitled to judgment as a matter of law that its floorplan loan agreements are valid and enforceable and that [Defendant] is liable for the indebtedness arising from Lyons Chevrolet's defaults under those agreements, considering that (1) the Final Cash Collateral Order and the Sale Order are final decisions on the merits; (2) [Defendant] in privy to the Final Cash Collateral Order as the sole shareholder and president of the Debtor and further is bound by the Sale Order under the Bankruptcy Court's findings and [Defendant's] individual failure to object to [Plaintiff's] claim in the context of the sale; (3) Lyons Chevrolet stipulated to its default the amount of that default, and the total balance due to [Plaintiff] in the Final Cash Collateral Order, while [Defendant], individually, did not object to (and indeed, the Bankruptcy Court allowed) [Plaintiff's] claim arising from its loan agreements in the Sale Order; (4) any alleged default of [Plaintiff] should have been raised as an objection or reserved with the entry of the Final Cash Collateral Order which was not done; and (5) the Bankruptcy Action and this action arise from the same predicate that is Lyons Chevrolet's defaults.

(Doc. No. 24 at 2-3). In short, Plaintiff claims that the Cash Collateral Order and Sale Order issued by the bankruptcy court ("Bankruptcy Court Orders") are entitled to the preclusive effect under the doctrine of *res judicata* (also known, and referred to hereafter, as claim preclusion).[6] As Plaintiff correctly suggests by citing a federal case for the elements of claim preclusion, (*id.* at 12 & n.11 (citing *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997))), the preclusive effect of a judgment of a bankruptcy court (which is, of course, a federal court) is governed by federal law.[7]

---

[6] "Claim preclusion and issue preclusion are roughly synonymous respectively with res judicata and collateral estoppel. However, because the latter terms have not been used consistently, we avoid confusion by referring to either the claim preclusive or issue preclusive effects of the state decisions." *Wicker v. Bd. of Educ. of Knott Cty., Ky.*, 826 F.2d 442, 448 (6th Cir. 1987). In short, risk of confusion is minimized when the term "claim preclusion," rather than *res judicata*, is used to refer to the doctrine whereby subsequent claims are, under certain circumstances, precluded based on the adjudication of prior claims.

[7] As the Sixth Circuit has explained:

Plaintiff lays out the elements of the doctrine of *res judicata* under federal common law, then endeavors to explain why all such elements are satisfied. But in focusing on whether claim preclusion is applicable (whether all of its elements are satisfied), Plaintiff has neglected to take account of what *res judicata* actually *does* when it is applicable. Before invoking claim preclusion, Plaintiff should have considered whether, if applicable, the doctrine could do for Plaintiff what Plaintiff wants it to do. And what Plaintiff wants it to do is enable it to prevail automatically as a matter of law, or to look at it from the other direction, to preclude Defendant as a matter of law from defeating Plaintiff's claim. But claim preclusion serves to do neither. As is axiomatic, and as Plaintiff specifically notes, "[claim preclusion] bars a subsequent action" if its elements are satisfied. (Doc. No. 24-1 at 12 (quoting *Bittinger*, 123 F.3d at 880)). In other words, it acts *defensively*, to preclude the so-called subsequent claim. But the "subsequent" claim here, of course, is *Plaintiff's current claim*; this current claim is the "subsequent" claim for claim-preclusion purposes because it is a claim brought subsequent to the earlier proceedings (here, the bankruptcy

---

The Sixth Circuit, when faced with determining the issue-preclusive effect of a prior federal court judgment, has followed the majority rule and applied federal law. *See J.Z.G. Resources, Inc. v. Shelby Ins. Co.*, 84 F.3d 211 (6th Cir. 1996) (applying federal law of issue preclusion to a federal diversity judgment in subsequent federal diversity action); *see also Monica v. Simpson (In re Simpson)*, 229 B.R. 419, 422 (Bankr.W.D.Tenn.1999) (applying federal law to determine issue-preclusive effect of bankruptcy court's default judgment); *In re Downs*, 205 B.R. 93, 95 (Bankr. N.D. Ohio, 1996) (federal law of issue preclusion applied to determine preclusive effect of judgment entered in trustee's adversary proceeding on trustee's subsequent objection to claim). According to the Sixth Circuit,

> [o]ne of the strongest policies a court can have is that of determining the scope of its own judgments. It would be destructive to the basic principles of the Federal Rules of Civil Procedure to say that the effect of a judgment of a federal court was governed by the law of the state where the court sits simply because the source of federal jurisdiction is diversity.

*J.Z.G. Resources*, 84 F.3d at 214 (quoting *Kern v. Hettinger,* 303 F.2d 333, 340 (2nd Cir.1962)).

*In re Moffitt*, 252 B.R. 916, 921 n.4 (B.A.P. 6th Cir. 2000); *see also  Southall v. USF Holland, LLC*, No. 3:19-CV-01033, 2021 WL 396688, at *2 (M.D. Tenn. Feb. 3, 2021) (noting that in federal cases, the preclusive effect of a federal-court judgment is determined by federal common law).

8

court proceedings) that supposedly have a preclusive effect. And, to say the least, Plaintiff does not want to *preclude* this claim; it wants to *prevail on* this claim. Plaintiff cites no authority for the proposition that claim preclusion can be used in this kind of "offensive," as opposed to "defensive," manner, and as noted above it refers to claim preclusion only as a tool for defending against (and defeating entirely) an opposing party's claim. The Court did find on its own an unreported Sixth Circuit case seeming to embrace the possibility of offensive use of "*res judicata*," by which it clearly meant "claim preclusion." *Harlem Globetrotters, Inc. v. Harlem Magicians, Inc.*, No. 88-5506, 1989 WL 40238, at *2-3 (6th Cir. Apr. 25, 1989). But the court patently had confused the viability of offensive *claim* preclusion with the viability of offensive *issue* preclusion. For the proposition that offensive claim preclusion is sometimes appropriate, the court cited (specifically and only) *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979). But *Parkland Hosiery* plainly involved only offensive *issue* preclusion; there the Supreme Court was very careful to note that the case before it "involves offensive use of collateral estoppel" inasmuch as "the plaintiff is seeking to estop a defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff. 439 U.S. at 329. So the Court declines to accept this unreported decision for the proposition—which is precluded from the get-go by the well-established articulation of the actual preclusive effect of claim preclusion—that claim preclusion somehow can have offensive preclusive effect. It is called *claim preclusion* for a reason; when it is applicable, it operates to *preclude*, not to *establish*, claims.

Plaintiff's own statement of the elements of claim preclusion merely highlights how, for the reasons just discussed, its invocation of *res judicata* is non-sensical. Citing *Bittinger*, it identifies the fourth element as an identity of the causes of action. (Doc. No. 24-1 at 12). But there is no such identity here. The "subsequent" (meaning, as noted above, the current) cause of action

9

is Plaintiff's contractual claim against Defendant. To say that this was not the same "cause of action" resolved via the Bankruptcy Court Orders would be an understatement. Without dwelling on the obvious, the Court will simply note that the Bankruptcy Court Orders, to the extent based on a "cause of action" (as opposed to grounds supporting motions), involved resolution of a cause of action of *Lyons Chevrolet*, not Defendant; where two respective causes of action are possessed by opposing sides, they hardly can be said to share the same "identity." Asserting otherwise, Plaintiff claims that "the Bankruptcy Action and this action are the same cause of action under [claim preclusion] because both actions arise from the same facts," which according to Plaintiff, means they are identical for claim preclusion purposes. (Doc. No. 24-1 at 19 (citing *Browning v. Levy*, 283 F.3d 761, 773 (6th Cir. 2002), and *Church J.V., L.P. v. Blasingame (In re Blasingame)*, 920 F.3d 384, 391 (6th Cir. 2019))). *Browning* and *Blasingame* do suggest a broad notion of identity of causes of action—essentially deeming it to exist whenever causes of action arise out of the same set of underlying facts—but case neither suggests that causes of action arising out the same underlying facts are identical for claim preclusion purposes even when possessed *respectively by opposing sides*. And if causes of action are possessed by opposing sides, that is a good clue that the same set of facts does *not* underlie both actions, as typically the respective sides will be relying for their cause of action (whatever its legal character) upon different *facts*— whatever specific facts support their respective causes of action—even if all facts invoked by both sides involve the same general *events* or *circumstances*.

On the other hand, as cases like *Parkland Hosiery* make clear, under some circumstances issue preclusion *can* be invoked offensively. *Parklane Hosiery Co.*, 439 U.S. at 331 (deciding "not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied"). When it is applicable, offensive collateral estoppel

obviously can assist a plaintiff by precluding a defendant from prevailing on key issues that were resolved against the defendant in an earlier proceeding. Issue preclusion, and the policies underlying it, perhaps would have been applicable here and assisted Plaintiff in establishing its claims, had Plaintiff invoked issue preclusion. But Plaintiff here did not invoke issue preclusion (whether using that term or the term "collateral estoppel") at all, let alone set forth the elements of collateral estoppel, let alone explain why they preclude Defendant from prevailing on particular issues, let alone explain why Defendant must suffer summary judgment based on the resolution of those particular issues against Defendant.

Accordingly, the Court declines Plaintiff's invitation to apply claim preclusion to grant summary judgment to Plaintiff.

B. *Waiver*

Plaintiff also contends that Defendant has waived its prerogative to do essentially anything to contest Plaintiff's claim against him. Specifically, Plaintiff writes, in what constitutes the entirety of its argument regarding waiver:

> A sister District Court in *Simon* has addressed the issue of waiver in connection with a cash collateral order by applying the following law:
>
>> Waiver and res judicata are similar defenses in that both result in claim preclusion. The preclusion under waiver is based on an intentional surrender of a claim or right, while res judicata is based on the foreclosure of a claim because of a failure to raise it during a previous opportunity. The intersection of the two defenses is noted in cases involving Rule 13 compulsory counterclaims. . . Although the defenses require different legal proofs, they are not dissonant concepts. Waiver is defined as "the intentional relinquishment or abandonment of a known right."34 In Simon, that bankruptcy court held that a preference action initiated against a creditor by a Chapter 7 trustee, who was preceded by a Chapter 11 debtor-in-possession, was barred under the doctrine of waiver when that court entered a prior cash collateral order between the debtor-inpossession and creditor, which made findings of the validity and enforceability of the creditor's lien similar to the admissions here.

In particular, Mr. Lyons attempts to dispute the validity of the Loan Documents and raise a defense of first to breach despite findings in the Final Cash Collateral Order where Lyons Chevrolet acknowledged its default, the amount owed, the SOT event, the validity and enforceability of the Loan Documents, and further, expressly "waiv[ed] and affirmatively agree[d] not to allege or otherwise pursue any or all defenses, affirmative defenses, counterclaims, claims, causes of action, recoupments, setoffs, or other rights that they may have to contest" any default under, any provision of, or the amount owed pursuant to the Loan Documents. Mr. Lyons, as sole shareholder and president of Lyons Chevrolet, cannot now dispute the validity and enforceability of the Loan Documents or his obligations for the Indebtedness of Lyons Chevrolet after Lyons Chevrolet expressly waived the issue as part of the Final Cash Collateral Order. Based upon the evidence in support of this Motion, establishing the validity and enforceability of the Loan Documents, along with the joint and several liability of Mr. Lyons for Lyons Chevrolet's obligations, GM Financial is entitled to judgment as a matter of law.

(Doc. No. 24-1 at 20-21) (citation and footnote omitted). This argument is too cursory to carry the day for Plaintiff. Seeking as it does to effectively wipe out Defendant's ability to defend this case in any meaningful way, Plaintiff must provide a much more through overview (not to say treatise) on the law of waiver. Plaintiff needs to explain whose law of waiver (state law or federal common law) governs the applicability of waiver to preclude defenses in a federal court (diversity) action based on the underlying law of a particular state. Then Plaintiff needs to explain the contours of waiver as it applies when asserted to preclude a defendant from defending the claims. Then Plaintiff needs to explain why waiver, as properly understood under applicable law applies here, considering, among other things, that the party against whom waiver is being invoked (Defendant) was not himself (unlike Lyons Chevrolet) a party making the admissions (in the Final Cash Collateral Order) supposedly supporting the application of waiver.

Had Plaintiff attempted to do these things, perhaps he could have succeeded. Doubtless, Plaintiff had available facts that would have smoothed the road to success in this particular endeavor, including the obvious exceedingly close relationship between Defendant (a natural

12

person) and Lyons Chevrolet (a legal entity). But Plaintiff failed to do so. It left the argument far too undeveloped. *See, e.g., United States v. Fowler*, 819 F.3d 298, 309 (6th Cir. 2016) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones." (citation and internal quotation marks omitted)). True, some arguments are slightly more skeletal than Plaintiff's argument here, but Plaintiff's argument here indeed lacks flesh on the bones, inasmuch as, for example, it cites only a single, unreported bankruptcy court case and does nothing to explain why Lyons Chevrolet's admissions necessarily effect waiver for Defendant just as they do for Lyons Chevrolet. Accordingly, the Court declines Plaintiff's invitation to apply waiver to nip in the bud any possible defense Defendant may have.

### C. *Rule 56 Argument*

That is not to say that Plaintiff cannot otherwise show that Defendant has no valid defense and that therefore Plaintiff is entitled to judgment as a matter of law. Indeed, Plaintiff believes that it can make just such a showing even without recourse to claim preclusion or waiver, based on an (unrestricted) review of the facts and the law. That is, Plaintiff argues that alternatively, Plaintiff "is entitled to judgment as a matter of law based upon the indisputable facts that demonstrate the amount owed to [Plaintiff] and [Defendant's] breach under the Guaranty, including, but not limited to, [Defendant's] failure to pay the outstanding obligations of Lyons Chevrolet upon written demand." (Doc. No. 24 at 4).

"To establish a breach-of-contract claim, a plaintiff must show (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of that contract, and (3) damages caused by the breach." *Commc'ns Unlimited Contracting Servs., Inc. v. Comdata, Inc.*, No. 3:17-

13

CV-01158, 2020 WL 606592, at *3 (M.D. Tenn. Feb. 7, 2020) (citing *Thomas v. Meharry Medical College*, 1 F. Supp. 3d 816, 828 (M.D. Tenn. 2014)).

Plaintiff argues that it is undisputed that "the Loan Documents are valid and enforceable contracts executed by Lyons Chevrolet through and by [Defendant] individually" and "[t]he Guaranty executed by [Defendant] is a valid and enforceable contract," wherein Defendant agreed to be personally liable to Plaintiff for any debts of Lyons Chevrolet. (Doc. No. 24-1 at 21 (citing SUMF at ¶¶ 1–6). Plaintiff asserts that it is undisputed that Defendant "has defaulted under and breached the Guaranty by, among other things, failing to pay the amounts due upon demand." (*Id.* at 22 (citing SUMF, ¶¶ 14–19)). Plaintiff contends that "[s]pecifically, [Plaintiff] made a demand for the payment of the floorplan balance of the [sold out of trust] vehicles, and despite the delivery of the April Demand to [Defendant], payment has not been made on the balance due to [Plaintiff] under the Loan Documents." (*Id.* at 23). Therefore, Plaintiff claims it "is entitled to judgment as a matter of law that [Defendant] is liable for all amounts due to [Plaintiff] from Lyons Chevrolet." (*Id.*).

In response, Defendant does not contest Plaintiff's argument that Defendant is liable for breach of contract. Accordingly, the Court finds that there is no genuine issue of material fact as to Defendant's liability on the breach-of-contract claim (Count I), and that Plaintiff is entitled to judgment as a matter of law as to liability on Count I. Thus, summary judgment will be granted as to Defendant's liability on Count I.

That leaves for resolution the issue of summary judgment as to damages on Count I. Defendant argues that summary judgment as to damages is nonetheless inappropriate because "[e]ven where liability is established or undisputed, summary judgment as to the amount of damages is impermissible where that amount is in dispute." (Doc. No. 36 at 6). Defendant argues

that the amount of debt is indeed in dispute. (*Id*. at 9). Defendant, citing his own declaration, asserts that "as of September 30, 2019, Lyons Chevrolet's business records show that the 'New Floorplan Principal Balance' and the 'Used Floorplan Principal Balance' of Lyons Chevrolet was over $860,000 less than the balances claimed by [Plaintiff]." (*Id*. (citing Doc. No. 38-1 at ¶ 2)). Defendant further contends that "as of March 31, 2020, Lyons Chevrolet's business records show that that the 'New Floorplan Principal Balance' and the 'Used Floorplan Principal Balance' of Lyons Chevrolet was over $230,000 less than the balances claimed by [Plaintiff]." (*Id*. (citing Doc. No. 38-1 at ¶ 2)). Defendant argues that these discrepancies in the amount of damages owed "[n]ot only [causes] a dispute as to the amount of principal debt owed by Lyons Chevrolet (and ultimately [Defendant]), it likewise causes a dispute as to the amount of interest that would be owed." (*Id*. (citing Doc. No. 38-1 at ¶ 2)).

In reply, Plaintiff argues that there is no genuine issue of material fact regarding damages, because the only evidence Defendant relies on to support his calculation of damages is the testimony in his own declaration, which Plaintiff attacks as purportedly containing hearsay statements.[8] Specifically, Plaintiff notes that Defendant refers to Lyons Chevrolet's "business records," then argues that any reference to such records "is hearsay outside of any exception . . . because [Defendant] has neither authenticated nor introduced these alleged records." (Doc. No. 39 at 3). Plaintiff asserts that "[a]lthough evidence on summary judgment is not required to be in an admissible form, inadmissible hearsay 'cannot create a genuine issue of material fact' and should be disregarded." (*Id*. at 3-4). Plaintiff also argues that Defendant's averments as to the amount

---

[8] Plaintiff actually claims that this testimony "is" hearsay. This is a mischaracterization because testimony in a declaration offered on motion for summary judgment is generally not hearsay. But as further explained herein such testimony could *refer to* (contain) hearsay, and this appears to be what Plaintiff actually intends to claim here.

15

owed, without attaching any actual business records, violates the best evidence rule. (*Id*. at 4). (Doc. No. 39 at 3).

Hearsay evidence is an out-of-court statement (except of the kind described in Rule 801(d)) offered to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). Under the so-called "hearsay rule," hearsay generally is inadmissible at trial. Fed. R. Evid. 802. And as a general rule, evidence that would be inadmissible at trial is inadmissible for the purpose of raising a genuine issue of material fact in response to a motion for summary judgment.

It is fundamental that a declaration, though an "out-of-court statement" that is invariably offered for the truth of every assertion the declarant makes in (or via) the declaration,[9] typically is not excluded from consideration on a motion for summary judgment on the grounds of hearsay. This is because on a motion for summary judgment, "as long as the [proponent of the evidence] can proffer that it will be produced in an admissible form," *Wyatt v. Nissan N. Am., Inc*., 999 F.3d 400, 423 (6th Cir. 2021), "proffered evidence need not be in admissible *form,* but its *content* must be admissible." *Bailey v. Floyd Cty. Bd. of Educ. By & Through Towler*, 106 F.3d 135, 145 (6th Cir. 1997) (citation omitted). And since testimony proffered by affidavit (or declaration) obviously can be produced at trial in admissible form—*i.e.*, via live testimony—affidavits (or declarations) are the quintessential example of evidence that generally would be inadmissible at trial (on hearsay grounds) but admissible on motion for summary judgment. *Cf. id.* (identifying, among examples of evidence properly presented on motion for summary judgment, "attested testimony, such as that

---

[9] Of course, a declaration may refer to assertions other than the assertions the declarant is making in (or via) the declaration, and these other assertions may not be offered for the truth of the matter asserted. For example, consider a declaration in which the declarant avers that another person said something to her and that it was a lie. In that case, the declarant is not offering the alleged lie of the other person for the truth of the matter asserted in the lie; to the contrary, it is being offered because in the declarant's view that matter asserted in the lie is not truthful. But the declaration *is* being offered for the truth of the *declarant's* overarching assertion: that the other person lied to her. In considering whether the *contents* of a declaration constitute hearsay, a court must always conduct this kind of analysis, asking itself whether a prior statement referred to in the declaration is being offered for the truth of the matter asserted.

16

found in affidavits or depositions"). This kind of attested testimony, such as a declaration, "will assist a plaintiff in surviving a motion for summary judgment, even if the [declaration] itself is not admissible at trial, provided substituted oral testimony would be admissible and create a genuine issue of material fact." *Id.* In short, the *contents* of the declaration are treated as if stated under oath in open court. But, as noted in a footnote above, the contents themselves may refer to prior statements made by the declarant or someone else, and these out-of-court statements may constitute hearsay. In short, at the summary judgment stage, generally a declaration as a whole is not subject to exclusion under the rule against hearsay, but particular parts of it could be.

So the question, as the Court has no doubt the parties' counsel understand, is whether challenged *contents* of the declaration include hearsay (and, if so, whether such content is nevertheless admissible based on an exception to the rule against hearsay).

The contents of the declaration challenged by Plaintiff do not constitute hearsay. The challenged contents consists of Defendant's *averments* as to the amount that is owed to Plaintiff. These averments do not refer to any out-of-court statements and thus do not refer to hearsay as defined by Rule 801(c) and thus do implicate the rule against hearsay at all.[10] It is possible that Plaintiff subconsciously had in mind a rule related to the rule against hearsay—the rule (implied in Fed. R. Evid. 602) excluding lay testimony unless based on personal knowledge; perhaps Plaintiff was thinking that Plaintiff lacked the personal knowledge necessary to make these averments inasmuch as he was relying solely on underlying documents to support his averments. But any such rationale would be off base. A party can have knowledge that amounts to "personal" knowledge even if such knowledge is based only on the review of documents; courts are loath to

---

[10] Of course, they (like all averments made in a declaration) *constitute* an out-of-court statement, but, as noted above, this reality is not grounds for excluding such averments on a motion for summary judgment; generally, the contents of a declaration will be excluded on the grounds of hearsay only to the extent that they include a reference to a *prior* out of court statement (typically made by someone else though occasionally by the declarant herself).

say that a party cannot claim "personal" knowledge over the details of their personal affairs merely because they had to consult documents to accurately glean such details; so if a party testifies that based on a review of his bank account statement, he had $100 in his account on January 1, experience shows that courts generally would accept this as personal knowledge, and this Court does likewise.

Here, Defendant has averred that he makes his averments based on his own personal knowledge. (Doc. No. 38-1 ("I make this declaration based on personal knowledge and/or knowledge reasonably made available to me.")). And it is clear that he is claiming personal knowledge as to the amounts owed to Plaintiff based on his review of records relating to what obviously are his personal (though also his company's) affairs. This suffices as personal knowledge of the facts he has averred on this topic.

In the Reply, Plaintiff does little to explain why it believes the averments regarding damages in Defendant's declaration refer to hearsay. Plaintiff merely asserts that Defendant refers to amounts owed that (according to Defendant) are reflected in his company's (Lyons Chevrolet's) business records, and notes that Defendant "does not declare that he was the custodian for these alleged records, that these records were made and kept in the regular course of business, or that the records were made and kept under a business duty."[11] (Doc. No. 39 at 3-4). But Plaintiff provides no support for the proposition that testimony about facts the witness has learned only from a review of documents is necessarily excludable (based on an alleged lack of personal knowledge or otherwise) unless the witness declares the particular facts that Plaintiff claims the

---

[11] Here, Plaintiff parrots some but not all of the requirements for records of regularly-conducted activity to be admitted into evidence despite their constituting or reflecting hearsay, under the so-called "business records exception" to the hearsay rule prescribed by Federal Rule of Evidence 803(6). Plaintiff provides no support for the proposition that a witness is precluded from testifying to facts gleaned from a review of records that otherwise would instill the witness with "personal knowledge" unless the declarant testifies to various elements of the business-records exception.

witness should have declared. Plaintiff's argument here only serves to highlight that Defendant's declaration does not attach, or refer to any statements in, any business records to support his calculation of damages.[12] Thus, according to Plaintiff's own argument, Defendant's declaration includes no business records that Plaintiff can attack as hearsay.[13]

Moreover, Plaintiff's argument regarding the best evidence rule also misses the mark. First, Plaintiff makes its best-evidence-rule argument in a perfunctory manner. (Doc. No. 39 at 4). The entirety of Plaintiff's argument goes like this: "Further, without introducing originals (or even copies) of these records, [Defendant's] testimony violates the best evidence rule." (*Id.*). Plaintiff refers here to Federal Rule of Evidence 1002, which (in conjunction with Rule 1003) essentially provides that a party seeking to prove the contents of a document generally must offer an original (or, alternatively in many cases, a copy) of the document. Plaintiff does nothing to explain *how* Defendant's not introducing the records violates the best evidence rule, and as discussed above, arguments referred to in a skeletal manner, "unaccompanied by some effort at developed argumentation, are deemed waived." *Fowler*, 819 F.3d at 319. Even if such argument were not waived, it still falls flat. "[T]he best evidence rule does not apply here because [Defendant] testified from [his[ personal knowledge. *United States v. Conteh*, 234 F. App'x 374, 387 (6th Cir. 2007) (citing *D' Angelo v. United States*, 456 F. Supp. 127, 131 (D. Del. 1978) ("The [best evidence]

---

[12] For emphasis the Court notes that it is one thing for a witness to testify that based on her review of records, X is true. It is another thing for a witness to testify that the records say that X is true. Depending on the circumstances, including the relationship between the witness and the records that underlie her conclusion that X is true, the witness may lack personal knowledge sufficient under Rule 602 for her to testify that X is true. But the witness's testimony does not include hearsay; it does not make reference to any particular assertion contained within the records that underlie the basis for her conclusion that X is true—let alone any assertion in the records that X is true. Indeed, the records, though helpful to the witness in determining that X is true, may not even make the specific assertion that X is true; the witness conceivably could reasonably have gleaned from the records that X is true even if the records make no assertion that X is true.

[13] As for the underlying business records, without dwelling on this point, the Court notes that there are multiple reasons why such records potentially would not have been excluded by the rule against hearsay had Defendant offered them.

19

rule is not applicable when a witness testifies from Personal [sic] knowledge of the matter, even though the same information is contained in a writing."). In short, the so-called "best-evidence rule" does not require a party to offer a document as the best "evidence" of a fact, and it has no applicability unless a party seeks to prove the contents of any documents. *Allstate Ins. Co. v. Swann,* 27 F.3d 1539, 1543 (11th Cir. 1994) ("Rule 1002 requires production of an original [or, alternatively if allowed under Rule 1003, a copy of] document only when the proponent of the evidence seeks to prove the content of the writing. It does not, however, require production of a document simply because the document contains facts that are also testified to by a witness." (bracket material added)). Accordingly, Plaintiff's best-evidence-rule argument is misplaced and thus (like Plaintiff's hearsay argument), fails to prevent Defendant from creating a genuine issue of material fact as to the amount of damages owed.

If Defendant's statements in his declaration are to be believed, there is a genuine issue of material fact as to the amount of damages owed to Plaintiff. And at this stage, the Court must believe him for two separate reasons: at summary judgment (1) "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," *Anderson*, 477 U.S. at 255, and (2) all evidence is to be construed in the light most favorable to the non-movant, which here, is Defendant, *Tlapanco*, 969 F.3d at 647. Accordingly, the Court finds that Defendant's statements in his declaration are sufficient to raise a genuine issue of material fact regarding damages.[14] Of course, if Defendant testifies similarly at trial, Plaintiff may cross-examine him, and such cross-examination may be useful in undermining the reliability of any assertion by Defendant as to the amount actually owed to

---

[14] The Court also finds, for the same above-described reasons when discussing Defendant's liability, that Defendant is not prevented from creating a genuine issue of material fact as to damages based on any res judicata or waiver argument.

Plaintiff. And of course Defendant would be acting at his peril if at trial he were again to rely merely on his own testimonial assertion (grounded in his review of relevant records) as to the amount of damages, without introducing any records to support such testimony. In other words, the Court find Defendant's averments admissible (as sufficiently based on personal knowledge and not otherwise excludable) and sufficient to defeat summary judgment as to the amount of his damages, even if such averments (especially if unsupported by other evidence) ultimately could prove non-credible or unpersuasive to the jury.

Accordingly, summary judgment as to Defendant's liability on the breach-of-contract claim will be granted, but summary judgment as to the amount of damages owed will be denied. Defendant has created a genuine issue of material fact as to the amount of damages owed by citing to his own declaration wherein he avers that he has personal knowledge of Lyons Chevrolet's business records and those records reveal different amounts owed to Plaintiff on certain dates than the amounts Plaintiff claims. (Doc. No. 38-1). *See Orlowski v. Bates*, 146 F. Supp. 3d 908, 930 (W.D. Tenn. 2015) (granting summary judgment on the plaintiffs' breach-of-contract claim, but denying summary judgment as to the amount of damages); *Michigan Millers Mut. Ins. Co. v. Lancer Ins. Co.*, 23 F. Supp. 3d 850, 853 n.1, 860 (E.D. Mich. 2014) (granting summary judgment on liability issue, but denying as to the amount of damages where dispute of material fact remained regarding amounts already paid).

<u>CONCLUSION</u>

For the above-stated reasons, Plaintiff's Motion will be GRANTED in part (on the issue of liability on Count I the breach-of-contract claim) and DENIED in part (as to the amount of damages on that claim).

Count II, not being implicated in the Motion, remains pending. Plaintiff shall advise the Court within a reasonable time period as to whether it persists in pursuing Count II, or whether instead it wishes to voluntarily dismiss Count II in light of the Court's finding of liability on Count I.

An appropriate order will be entered.

_Eli Richardson_

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE